# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
BETHANY COLEMAN-FIRE, LAW CLERK

**TRANSMITTED VIA ECF**

December 28, 2012

Albert N. Kennedy
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

Thomas W. Stilley
Sussman Shank LLP
1000 SW Broadway, Ste. 1400
Portland, OR 97205

    Re: General Auto Building, LLC, Case No. 12-31450-elp11
        Application to Compensate Casinelli Jackson
        Motion for Relief from Stay

Dear Counsel:

The purpose of this letter is to advise you of my ruling on the two matters that were heard on December 4, 2012.

Debtor asks to be allowed to compensate its appraiser, Casinelli Jackson LLC, in the amount of $4,950. Creditor Park & Flanders LLC ("P&F") moves for relief from the automatic stay.

P&F holds two claims, both secured by debtor's building and rents from the building. As of the petition date, the first loan had a balance of approximately $10.5 million and the second loan had a balance of approximately $1.48 million.

The primary issues remaining after the hearing are: (1) what standard applies in deciding whether to allow debtor to compensate its appraiser out of P&F's cash collateral; and (2) does debtor have to make interest payments on P&F's oversecured claim in order to adequately protect P&F's interest in its collateral to avoid relief from stay under § 362(d)(1)?

1. <u>Application to compensate appraiser</u>

Debtor's payment of the appraiser fee would need to come out of P&F's cash collateral. P&F objects to the payment but not the allowance, arguing that, absent the creditor's consent, a debtor

Albert N. Kennedy
Thomas W. Stilley
December 28, 2012
Page 2

cannot pay administrative expenses out of a creditor's cash collateral unless the expenses benefit the secured creditor and are necessary to preserve and protect the secured creditor's collateral. In support of that proposition, P&F cites <u>In re Cascade Hydraulics & Util. Serv., Inc.</u>, 815 F.2d 546 (9th Cir. 1987).

Section 363(c)(2)(B) provides that, "[a]bsent the secured party's consent, a trustee may not use cash collateral unless 'the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.'" <u>In re ProAlert, LLC</u>, 314 B.R. 436, 440 (9th Cir. BAP 2004). If requested by a party that has an interest in the property to be used, the bankruptcy court must "prohibit or condition" the use of property of the estate "as is necessary to provide adequate protection of such interest." § 363(e). The issue in the use of cash collateral is whether the debtor can provide adequate protection for the interest of the secured creditor.

P&F argues that <u>Cascade Hydraulics</u> stands for the proposition that a debtor cannot pay administrative expenses out of a creditor's cash collateral unless the expenses benefit the secured creditor. <u>Cascade Hydraulics</u> is not on point. As the panel pointed out in <u>ProAlert</u>, <u>Cascade Hydraulics</u> dealt with the payment of administrative expenses from the proceeds of a sale, pursuant to § 506(c). 314 B.R. at 443. That section allows a trustee to recover from property securing a claim "the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim[.]" § 506(c). Under those circumstances, the statute specifically requires a benefit to the creditor.

Debtor seeks to pay its appraiser from P&F's cash collateral, which is governed by § 363, not § 506(c). <u>ProAlert</u>, 314 B.R. at 440-444. Section 363 requires adequate protection, not benefit to the creditor.

The question, then, is whether P&F is adequately protected. The Code provides that adequate protection may be provided by cash payments, "an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property;" or other relief that is "the indubitable equivalent or such entity's interest in such property." § 361.

Debtor argues that P&F's secured position is adequately

protected by an increase in the value of the building since the petition date and the fact that taxes and insurance on the building are now current.  In addition, debtor says that it is prepared to begin making monthly adequate protection payments "in an amount equal to interest at the applicable non-default contract rate of interest on the value of Park & Flanders' interest in the Building."  Debtor's Response to Park & Flanders LLC's Objection to Notice of Intent to Compensate Cassinelli Jackson LLC at 3.  According to debtor's Response to Park & Flanders LLC's Motion for Relief from Stay, that amount is either $23,000 per month, if based on the construction term rate, or $29,000 per month, if based on the term loan rate.  Debtor's Response at 9 n.4.  Those payments would come from the rents, which are P&F's collateral, because debtor has no other source of funds.

 P&F holds two loans, at minimum one of which is at best undersecured.[1]  Even assuming that the building has increased in value since the petition date, as debtor argues, there is no evidence that the increase in value of the building is sufficient to fully secure P&F's undersecured claim.  Debtor has no other unecumbered assets on which to give a replacement lien.  Therefore, any use of rents to pay someone other than P&F, not related to maintaining or preserving the building, would reduce the value of the collateral that secures P&F's claims.

 Where a claim is undersecured and a portion of the security is rents, there are no unencumbered assets on which the debtor can give a replacement lien, and the collateral has not increased in value sufficiently to fully secure the creditor's interest, adequate protection for use of cash collateral to pay expenses unrelated to preservation of the collateral or someone other than the secured creditor cannot be provided by the increase in value or by the payment of interest, which payments come from and reduce the value of the collateral.  See § 361.

 Therefore, I will deny debtor's application to compensate Casinelli Jackson LLC out of the rental income.

---

[1] Debtor argues that the first loan owned by P&F is undersecured and the second loan is wholly unsecured.  P&F argues that the first loan is oversecured and the second is undersecured.  I need not decide which is correct; in either event, P&F's second loan is at best undersecured, and that loan is secured in part by rents.

Albert N. Kennedy
Thomas W. Stilley
December 28, 2012
Page 4

2. <u>Relief from stay</u>

P&F has moved for relief from stay to allow it to enforce its rights and remedies under the loan documents. P&F asks for relief under three different provisions, § 362(d)(1), (d)(2), and (d)(3). I conclude that P&F is not entitled to relief under § 362(d)(2), because the property is necessary to an effective reorganization, or under § 362(d)(3), because debtor filed a plan of reorganization within 90 days after the petition date that had a reasonable possibility of confirmation.

Section 362(d)(1) provides that, on request of a party in interest, the court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"

The issues that require discussion are whether debtor needs to pay postpetition interest on the loans in order to provide adequate protection as required by § 362(d)(1), and if so, at what rate and from what point in time.

P&F argues that both the first and second loans lack adequate protection, and therefore it is entitled to relief. It claims that debtor lacks a sufficient equity cushion to provide adequate protection for the first loan and the security for the second loan has been reduced during the case by the accrual of interest, fees, and costs and debtor's failure to make loan payments.

Debtor responds that adequate protection is determined by the value of the collateral on the petition date, and that as of the petition date, the first loan was only partially secured and the second loan was fully unsecured. It argues that the value of the building has increased since the petition was filed, thereby providing adequate security for the first loan. In addition, debtor offers to make adequate protection payments of up to $29,000, the non-default term interest rate, on the first loan.

At the hearing on the motion for relief from stay, it became clear that P&F's argument was that debtor was required to pay the full interest payments each month, which it said was between $82,000 and $85,000 per month,[2] in order to provide adequate

---

[2] Debtor says this is the non-default rate of interest. P&F does not say what interest rate it is using to calculate the
(continued...)

Albert N. Kennedy
Thomas W. Stilley
December 28, 2012
Page 5

protection. Based on debtor's most recent financial information, P&F argues that debtor does not have the cash flow to make those payments. In support of its argument, it relied on cases cited in its reply brief.

The cases P&F cites in support of its argument that a debtor must pay the entire default interest payment every month in order to adequately protect the creditor's interest in the collateral are not on point. The cases, In re T-H Orleans Ltd. P'ship, 116 F.3d 790 (5th Cir. 1997); In re Urban Communicators PCS Ltd. P'ship, 379 B.R. 232 (Bankr. S.D.N.Y. 2008); and In re SW Boston Hotel Venture, LLC, 479 B.R. 210 (1st Cir. BAP 2012), all deal with the question of how to value property to determine a secured creditor's right to postpetition interest under § 506(b). The court in each case concluded that it should take a flexible approach in a situation where the collateral is increasing in value or the creditor's allowed claim is being reduced by cash collateral payments. If an undersecured claim becomes fully secured at some point during the case, the creditor becomes entitled to payment of postpetition interest under § 506(b).

Those cases do not address adequate protection payments to a creditor in a circumstance such as the one we have here, where at least one of P&F's loans is undersecured, and the security is both an income-producing property and rents collected on that property. In this situation, P&F has not provided any authority for requiring a debtor to pay the full amount of the accruing interest, apparently at the default interest rate, in order to adequately protect the secured creditor's interest in the collateral.

Debtor has offered to pay an amount equivalent to interest at the non-default rate. P&F is not entitled to payment at the default rate; debtor may be able to cure any default through the plan, in which case there will be no default and no right to the default rate.[3] P&F is adequately protected by the payment of the non-default rate set out in the notes. Debtor should pay the

---

[2](...continued)
$82,000 to $85,000 per month payment. The difference from debtor's calculation can only be explained by P&F's application of the default rate of interest.

[3] The court reserves for a later date the issue of whether P&F is entitled to default interest if debtor fails to cure any default as part of confirmation.

Albert N. Kennedy
Thomas W. Stilley
December 28, 2012
Page 6

larger amount offered, $29,000 per month, which is the term interest rate, in order to provide adequate protection to P&F for its interest in debtor's property.

P&F argues that it is entitled to interest from the petition date. In <u>In re Sherman Lee</u>, Case No. 384-01087 (May 22, 1985), Perris, J., I held that adequate protection payments should be paid from the date the creditor files a motion for relief from stay making a demand for adequate protection, not from the petition date. In this case, the original relief from stay motion filed by Homestreet Bank did not seek payment of interest. The first demand for interest was in P&F's motion, which was filed on November 8, 2012. That is the date from which interest payments will be required.

Because P&F is adequately protected,[4] and I reject P&F's other arguments for relief without further discussion, P&F's motion for relief from stay will be denied.

3. <u>Conclusion</u>

Debtor's application to compensate Casinelli Jackson will be allowed but no payment from the rents will be allowed. Mr. Stilley should submit an order.

P&F's motion for relief from stay will be denied. Mr. Kennedy should submit an order denying the motion and requiring the monthly interest payment to P&F of $29,000 to provide adequate protection.

                                      Very truly yours,

                                      */s/ Elizabeth L. Perris*

                                      ELIZABETH L. PERRIS
                                      Bankruptcy Judge

---

[4] P&F is adequately protected for purposes of relief from stay, because the interest payments are being made to it as the creditor. It is not adequately protected for purposes of use of cash collateral to pay the appraisal fee, because the payment is going to a third party.